## J. N. FRUM, Appellant, v. F. M. KEENEY.

**Accepting Altered Note:** PLEADING OVER. Plaintiff was to give defendant a note for certain property purchased. Defendant prepared the note, which plaintiff signed and returned to defendant; but before doing so, without defendant's knowledge, he erased a clause in the note making it negotiable. *Held,* that the acceptance of the note by defendant without examination when it was. handed back to him was not negligence, and his giving an order thereupon for delivery of the property did not constitute a settlement which precluded him from refusing to retain the note or to deliver the property on learning of the erasure.

**EVIDENCE OF KNOWLEDGE.** Where plaintiff, on signing a note to be given to defendant, and which the latter had prepared, without defendant's knowledge, erased the clause making the note negotiable, evidence that he had been previously told that defendant had sold the note is admissible on the issue as to whether the. delivery and acceptance of the note as altered were binding on, the defendant, and on the knowledge he had when he altered the, note.

**Custom :** EVIDENCE. Where notices giving the terms of a public sale· stated that credit would be given "on note with approved security," evidence of a long-existing and uniform custom in the· community, where terms of sale were like those stated, to require· negotiable notes, is admissible to fix the terms of the contract with a purchaser whose bid was accepted, there being evidence that the buyer knew of the custom.

**Demurrer :** EFFECT OF PLEADING OVER. The provision of acts twen-· ty-fifth General Assembly, chapter 96, that "when a demurrer shall be overruled, and the party demurring shall answer or

| 109 | 393 |
| 111 | 58 |
| 111 | 507 |
| 109 | 393 |
| 115 | 350 |
| 115 | 562 |
| 109 | 393 |
| 116 | 503 |
| 109 | 393 |
| 119 | 120 |
| 109 | 393 |
| 123 | 394 |
| 109 | 393 |
| 130 | 508 |
| 130 | 528 |
| 109 | 393 |
| 132 | 759 |
| 109 | 393 |
| 136 | 626 |
| 136 | 677 |
| 136 | 710 |
| 109 | 393 |
| 137 | 583 |

reply, the ruling on the demurrer shall not be considered an adjudication of any question raised by the demurrer; and in such case the sufficiency of the pleading thus attacked shall be determined as if no demurrer had been filed " — does not change the rule that by pleading over he waives the right to complain of the rulings on the demurrer. The effect of the statute is to permit the one who pleads after his demurrer is overruled to again raise the questions made by the demurrer, as by motion to direct a verdict or in arrest of judgment.

**Instructions:** CONFLICTING : *Harmless error.* Error cannot be predicated on an instruction because it was in conflict with previous rulings of the court, where such charge was in favor of the appellant.

*Appeal from Pottawattamie District Court at Avoca.*—Hon. W. R. Green, Judge.

WEDNESDAY, OCTOBER 18, 1899.

ACTION at law for the recovery of specific personal property. There was a trial by jury, and a verdict and judgment for defendant. The plaintiff appeals.—*Affirmed.*

*Benjamin & Preston* for appellant.

*Turner & Cullison* for appellee.

ROBINSON, C. J.—On the 23d day of February, 1897, the defendant had a public sale of stock and other personal property at his place of residence in Pottawattamie county, and the plaintiff was the successful bidder for hay and cattle, the aggregate price of which was four hundred and twenty-four dollars. The published terms of sale were stated as follows: "* * * * All sums over ten dollars, a credit of one year will-be given purchaser, on note with approved security, bearing eight per cent. interest from date of sale. * * * No property removed until settled for." The defendant had arranged with one E. C. Clapp for the sale to him of the notes which should be taken for property sold. On the 11th day of March, 1897, the plaintiff appeared at the office of Clapp,

and informed him and the defendant that he was ready to give a note for the property he had purchased. Clapp drew a note, and handed it to the plaintiff to be signed. When the note was handed to him, it provided for payment "to the order of F. M. Keeney." The plaintiff went to another part of the office, and, without the knowledge of the defendant or Clapp, erased the words "the order of," signed the note, caused his brother to sign it as surety, and handed it to the defendant, without calling attention to the change. The defendant did not read the note, but caused Clapp to write an order for the property. A few minutes later the alteration was discovered, and the defendant at once notified the plaintiff that the note was not satisfactory, and refused to permit him to take the property for which it was given. This action was then commenced to recover possession of the property. The ultimate question to be determined is whether the note as signed was in compliance with the terms of the sale. The plaintiff insists that it was, while the defendant contends that a negotiable note was required.

I. The original answer of the defendant admitted that he had possession of the property in controversy when the action was commenced, and that it was not taken on execution or any order of court, and denied all allegations of the petition not admitted. In an amendment to the answer the defendant admitted that the plaintiff was the successful bidder for the property at a public sale held by the defendant, but averred that the sale was had and conducted in accordance with the terms set out in a printed poster, a part of which we have set out; that it had been the uniform rule and custom of the neighborhood wherein the plaintiff and the defendant resided, and wherein the sale was had, during more than twenty years, for the purchasers at such sales, held upon the terms stated in the poster, to make negotiable promissory notes for all property purchased on credit; and that the plaintiff refused to make a negotiable promissory note for the property in controversy, and refused to

pay cash for it and to perform the conditions of the con-
tract of purchase. The plaintiff filed a motion to strike
from the amendment so much thereof as pleaded a custom,
and the refusal of the plaintiff to comply with it and with
the contract of purchase, on the ground that it was redund-
ant, incompetent, and irrelevant. The motion was over-
ruled. The plaintiff then demurred to the amend-
ment on the ground that it showed that the terms of
sale were plain and unambiguous, and could not
have been changed or varied by a custom or rule of the
neighborhood, for that it was not shown that the plaintiff
had any knowledge of the custom. The plaintiff also
demurred, upon the same grounds, to so much of the amend-
ment as had been unsuccessfully assailed by his motion.
The demurrer was overruled, and the plaintiff then filed
a reply to the answer as amended. He insists that the
rulings on the motion and demurrer were erroneous. The
defendant claims that, if erroneous, the errors, were waived
by the filing of the reply. In response to that claim the
plaintiff refers to chapter 96, Acts Twenty-fifth General
Assembly, in force when the rulings were made, which con-
tained the following: "A demurrer shall be considered as
an admission of the allegations of the pleading demurred
to for the purposes of demurrer, and for such purposes only;
and when a demurrer shall be overruled, and the party
demurring shall answer or reply, the ruling on the demurrer
shall not be considered an adjudication of any question
raised by the demurrer; and in such case the sufficiency of
the pleading thus attacked shall be determined as if no
demurrer had been filed. No pleading shall be held suffi-
cient on account of a failure to demur thereto." The defend-
ant relies upon *Wyland v. Griffith,* 96 Iowa, 24, and *Krause
v. Lloyd,* 100 Iowa, 666, in support of his claim that the
errors, if any, in the rulings were waived. The case first
cited, although decided by this court after the act referred
to took effect, was not within its provisions, for the reason

that the case was determined in the district court before
the act was passed, and no reference to the act was made
by this court. In the case last cited we held that the statute
did not change the rule, where a demurrer had been sus-
tained, and, as the statute did not apply to motions, the
error, if any, in the ruling on the plaintiff's motion to
strike, would be regarded as waived. The demurrer in ques-
tion was overruled, and therefore the statute applied to
it, and we are required to determine its effect. It was
not designed to permit a review of the ruling on a demurrer
which had been overruled, where the party demurring had
afterwards filed an answer or reply, but to provide that the
ruling should not have the effect of an adjudication, and
to permit the party demurring unsuccessfully to question
the sufficiency of the pleading in other ways during the
progress of the trial, as by a motion to direct the verdict
or in arrest of judgment. In other words, in such a case
the party waived his right to complain of the overruling of
his demurrer by pleading over, but did not waive his right
to attack the pleading on the grounds upon which his demur
rer was founded at any subsequent time in the progress
of the case; for the statute expressly provided that where
a demurrer was overruled the sufficiency of the pleading
attacked was to "be determined as if no demurrer had been
filed." It follows from what we have said that the plaintiff
is not entitled to a review of the rulings on the motion,
and the demurrer and the questions involved therein were
not again presented during the trial.

II. The defendant testified that after the note was
signed it was handed to him, and that he laid it on Clapp's
desk. He was then asked: "What, if anything, did you
do in the way of examining the note after Mr. J. N. Frum
handed it to you?"—and was permitted to answer, notwith-
standing an objection of the plaintiff: "I did not examine
it at all. I saw Mr. Frum, or thought I saw them sign
their names to the note." The defendant also testified that

nothing was said at that time about a change in the note. The plaintiff complains of the ruling, and insists that it was the duty of the defendant to examine the note when it was handed to him; that as he was able to read it, and failed to do so, he should not be heard to say that he did not know its contents; that his acts in receiving the note without reading it, and without objection, and in giving the plaintiff an order for the property, should be given the force and effect of a settlement. This case differs in legal effect from one in which a person signs, without reading, a writing prepared by a party adversely interested. The note in question had been drawn as the defendant desired to have it made. The plaintiff knew that fact, and good faith and business usage demanded that he make his objection known, or at least that he do nothing to mislead the defendant. By signing the note in the presence of the defendant without making known any objection, the defendant was naturally led to believe that the note was signed without change; and the plaintiff knew that fact, and knew that the defendant did not know of or assent to the change when the note was delivered to him. As soon as he discovered the change he refused to assent to it, and tendered the note to the plaintiff. We are of the opinion that there was not such an agreement of the parties as constituted a settlement, and that the defendant was not guilty of such negligence as to be estopped to deny the alleged settlement.

III. Clapp and the defendant were permitted to testify that for twenty years it had been the uniform practice in the neighborhood where the sale in question was made, when the terms at such sales were like those set out in the notice from which we have quoted, for purchasers to give negotiable promissory notes for property purchased. The plaintiff objected to the testimony on the ground that the witnesses were not competent, and that their testimony was incompetent, irrelevant, and immaterial. The witnesses showed that they had knowledge of the alleged

custom, and their testimony was relevant and material. The terms of sale provided that a credit of one year would be given persons who purchased property for more than ten dollars, "on note." The notes intended were evidently promissory notes, and they are negotiable or non-negotiable. It was proper to show the custom which prevailed at such sales, in order to determine what kind of notes was contemplated by the terms of sale and by the purchasers; and to permit that to be done was not to defeat or vary the contract, but to construe and enforce it according to the intent of the parties to it. See *Rindskoff v. Barrett,* 14 Iowa, 101; Gillett Indirect and Collateral Evidence, section 126; Bradner Evidence, 161; Clark's Browne Usages and Customs, sections 39—41.

IV. The defendant was permitted to testify that all the notes, except the one in suit, given for property purchased at his sale, were negotiable, that about twenty-five or thirty purchasers gave notes, that he did not hear any objections made to the kind of notes required, and that he had told the plaintiff that Clapp, who had passed upon the sufficiency of the notes, had purchased them. Clapp was also permitted to testify that ten or twenty notes were given at the sale, and that no objection was made to the giving of negotiable notes. The testimony of the defendant to the effect that he had told the plaintiff that the notes were sold to Clapp was competent, as tending to show the knowledge possessed by the plaintiff when he altered the note. The testimony respecting the number and kind of notes given, and that there was no objection to making them negotiable, if erroneously admitted, was not prejudicial, for the reason that the testimony showed, without conflict, that it was the uniform custom in the neighborhood where the sale was made, at sales made on the terms in question, for purchasers to give negotiable promissory notes for deferred payments, and the testimony of the plaintiff shows that he knew of the custom.

V. The plaintiff complains of the third paragraph of the charge, in part, on the ground that it was in conflict with the rulings of the court on the motion and demurrer. One of the objections presented by the motion and demurrer was that the amendment to the answer did not show that the plaintiff knew of the custom pleaded when the sale to him was made. The portion of the charge referred to required the jury to find for the plaintiff unless the defendant had established, both the custom, and that the plaintiff knew of it when he made his bids. We may concede that there was a conflict between the rulings on the motion and demurrer and the charge, but we can now consider only the charge, and the variance in that from the previous holdings of the court was in favor of the plaintiff, and not prejudicial. It is also said the paragraph of the charge in question was prejudicial because it ignored the settlement pleaded in the reply, alleged to have been made by the waiving of the terms of sale, and the acceptance of the note in question. There was nothing in the evidence to justify a finding that there had been such a settlement. Moreover, the fifth paragraph of the charge required the jury to determine whether there had been a settlement as claimed. It is said that paragraph is erroneous, but, if that be true, the error was in the interest of the plaintiff.

VI. Other questions discussed in argument are disposed of by what we have already said, or are not of sufficient importance to justify particular mention of them. We do not find any error in the record of which the plaintiff can properly complain. The defendant elected to take a judgment for the value of the property, and a judgment to that effect was rendered. We think it correct, and it is AFFIRMED.