J. E. MILLER v. MASON CITY & FORT DODGE RAILROAD
COMPANY, Appellant.

**Contracts:** ORAL MODIFICATION: AUTHORITY OF AGENT: EVIDENCE.
1 On an issue as to whether the president of a railway company authorized the engineer to waive the provisions of a written agreement with a contractor, stipulating against liability of the company for delays in furnishing material, the evidence is held insufficient to show authority.

**Contract for services:** BREACH: QUANTUM MERUIT. Where one undertakes to perform a service and accepts compensation therefor in accordance with the terms of a contract, he cannot abandon the agreement and recover on the *quantum meruit,* especially where no benefit was derived from the services.

*Appeal from Webster District Court.*— HON. J. H.
RICHARD, Judge.

TUESDAY, JULY 10, 1906.

REHEARING DENIED, WEDNESDAY, NOVEMBER 21, 1906.

ACTION to recover for services rendered by plaintiff to defendant under a contract to drill and case wells for the defendant at various points along its line of road, and for damages caused to plaintiff by the failure of defendant to comply with the terms of its contract as to furnishing casings. Verdict and judgment for plaintiff. Each party appeals, but defendant, having first served notice of appeal, will be designated as the appellant. *Affirmed* on plaintiff's appeal. *Reversed* on defendant's appeal.

*Healy Bros. & Kelleher,* for appellant.

*Martin & Mitchell,* for appellee.

McCLAIN, C. J.— The written agreement made September 4, 1902, between the plaintiff and defendant, contains substantially the following stipulations: The plaintiff agreed to do all the work and furnish all the tools required to drill and case six-inch wells at such points along the line of defendant's road and to such depths as should be designated by the chief or an assistant engineer of defendant, and defendant agreed to furnish the iron casings for such wells and deliver the same to the points required as soon as its tracks should reach said points. All work done by the plaintiff was to be of first-class quality and " pursuant to the directions of and to the entire satisfaction of said chief engineer, who shall have the right, if in his opinion any of said work is not properly done, to suspend said work or any part thereof, and reject the same or any part thereof, or order the entire reconstruction of such work or any part thereof. The company shall not allow, and the contractor shall not present, any claims for compensation for damages

arising from any cause whatever, or from any delays to
which the contractor may be subjected." Payment was to
be made, on or about the 15th day of every month, of 85
per cent. for work done during the previous month, on esti-
mates by the chief engineer, until the whole had been com-
pleted to the satisfaction of said chief engineer; and when-
ever the work was in the opinion of said chief engineer
completely finished in every respect, said engineer was to
furnish the company with a certificate of the fact, together
with his estimate of the work done under the agreement,
" which estimate shall be final and conclusive between the
parties hereto," and the balance of the compensation was
then to be paid within thirty days. Under this contract
wells were drilled and cased by plaintiff at Roelyn Station,
at Lohrville, at Lidderdale, and at West Ft. Dodge before
January, 1903. During January, February, and March,
1903, plaintiff worked on a well at Halbur, which was never
completed, but on which monthly estimates were allowed by
the chief engineer under which plaintiff was entitled to
receive $188.54. As we understand the record, defendant
had paid to plaintiff, before suit was brought, the entire
amount claimed by him under the contract for the four com-
pleted wells and the two monthly estimates on the Halbur
well, except $49.37, which amount was tendered by defend-
ant to plaintiff in its answer. Plaintiff sought in this action
to recover a considerable sum by way of damages for delay
caused by defendant in failing to furnish casings as required
by the contract, and another sum for sinking the well at
Halbur to the depth of three hundred and eighty-five feet,
claiming that he was prevented from completing the last-
named well by breach of contract on the part of defendant.
The court withdrew from the jury any claim with reference
to damages for delay and authorized the jury to return a
verdict for plaintiff for services rendered in sinking the Hal-
bur well over and above the amounts paid and tendered on
account of the estimates approved as to such well.

I.   On the appeal of plaintiff it is urged that the court erroneously withdrew from the jury any claim for damages by reason of delay in furnishing casings.   This claim, as

1. CONTRACTS: oral modification: authority of agent: evidence.

we understand it, extended to delays on the work on the four wells which were finally completed and paid for, as well as on the Halbur well, which was never completed.   By reference to the terms of the contract it will be seen that plaintiff was not entitled to compensation for delays.   But, as we understand the argument, it is contended that there was some oral agreement made between the plaintiff and Colt, the president of the defendant company who signed the original written agreement for defendant, or the chief engineer of the defendant company, by which it was stipulated that plaintiff should have compensation for damages caused to him by delays of defendant in furnishing casings under the written agreement.   The only evidence in the record sustaining this claim of plaintiff as to an oral contract is the testimony of plaintiff as a witness that in a conversation with Colt, the president of defendant company, soon after the execution of the written contract and before any work had been done thereunder, he was told by Colt that he would have to go to Marston, the chief engineer, with reference to the work under the contract, and whatever Marston agreed to do would be satisfactory to the president and the company, and the further testimony of plaintiff that while at work on the Lohrville well, about November 1st, he told Marston that he would have to quit and take his machine home, because he could not pay board and have no well casings, and Marston said that would not do; that the company would pay plaintiff seventy-five cents an hour for the time while he was waiting.   We think this testimony, if submitted to the jury, would not have sustained a finding that Colt agreed that Marston should have authority to modify the terms of the written contract with reference to compensation for delay; and there is no other evidence that

Marston had such authority. Nor do we think that, even if Marston had authority, or was given authority, to modify the terms of the written contract in this respect, any such modification with reference to any other well than the Lohrville well could have been found by the jury under this testimony. Plaintiff accepted full payment for the Lohrville well without making any claim of compensation for delay, and therefore there was nothing to submit to the jury with reference to damages for delay as to any of the wells. There was no specific provision in the written contract as to what wells plaintiff should drill for defendant, and defendant might terminate the contract at any time. The court was right, as we think, in refusing to submit to the jury any claim of plaintiff for damages caused to him by delay of defendant in furnishing casings.

II. The complaint on defendant's appeal is substantially that the court erred in submitting plaintiff's claim for *quantum meruit* on account of his work on the Halbur

2. CONTRACT FOR SERVICES: breach: quantum meruit.
well, and we think that this complaint is well founded. Plaintiff does not ask recovery under the terms of the contract, and practically concedes that by the contract he has no cause of action; but he contends that by reason of a breach of contract on the part of defendant he was prevented from completing the well and becoming entitled to the compensation therefor provided by the contract, and he further claims that, even though he himself failed to complete the work as required by the contract and violated its provisions, so as not to be entitled to compensation thereunder, he nevertheless was entitled to recover for the services actually performed. The court did not submit the case to the jury on the theory that plaintiff had been prevented by breach of contract on the part of defendant from completing the work on the Halbur well. No question was submitted as to whether defendant had broken its contract to plaintiff's prejudice, and certainly under the evidence the court was not justified in assuming

that as a matter of law the contract had been thus broken by defendant. But the court submitted to the jury the bald issue as follows: " You will find and allow plaintiff against defendant, on account of such work as he did in drilling and casing or making the said Halbur well, the fair and reasonable value of his services so performed." The other instructions, aside from those stating the issues and those purely formal in their nature, were concerned only with the method of arriving at a verdict by deducting from the reasonable value of the services performed in the drilling and casing of the Halbur well the amount already paid by defendant on the monthly estimates on account of that well, adding thereto the amount of defendant's tender. The court assumed, therefore, that plaintiff, having performed services under a contract, could voluntarily abandon that contract as furnishing the basis for his recovery, and have by way of compensation the reasonable value of the services performed under the contract, regardless of its provisions with reference to his right to compensation. / Under the contract plaintiff could have compensation only when the work was done to the approval of the chief engineer. It is not claimed that any such approval was ever given, or that it ought to have been given. As to a part of the compensation, at least, there was no obligation of the defendant to make payment until the well was completed. And yet, without showing that the approval of the engineer was given, or ought to have been given, and in the face of the fact that the well was never completed, the court authorized the jury to give plaintiff compensation to as full an extent as though the work had been done to the approval of the engineer, and the well fully completed, so that the defendant had a well, instead of a hole in the ground with some useless casing in it, which had to be plugged up with a post.

We are not concerned now about any conflict in the evidence as to whose fault it was that the well was not completed. If there was any question of that kind it should

have been submitted to the jury. There was at least some evidence that plaintiff disregarded the instructions of the engineer as to putting down the casing, and thereby barred himself from any right to recover under the terms of the contract. That parties may contract with reference to the approval of work to be done under their agreement, so that the one rendering services cannot recover unless the services rendered are approved as satisfactory by such person, is well settled. *Edwards v. Louisa County,* 89 Iowa, 499; *McNamara v. Harrison,* 81 Iowa, 486; *Ross v. McArthur,* 85 Iowa, 206; *Inman Mfg. Co. v. American Cereal Co.,* 124 Iowa, 737. There was no allegation nor proof that the failure of the engineer to give a certificate was due to mistake or fraud. A party cannot abandon his remedy under a contract and sue for compensation for services rendered in disregard of the contract. *Ætna Iron & Steel Works v. Kossuth County,* 79 Iowa, 40; *Parker v. Scott,* 82 Iowa, 266. In cases analogous to the one before us it has been held that one who undertakes to bore or drill a well can only recover when he has complied with the provisions of his contract. *Jackson v. Creswell,* 94 Iowa, 713; *Barnes v. Rawson,* 111 Iowa, 426; *Connor v. Trapp,* 127 Iowa, 742. Plaintiff relies on cases in which it is held that one who has broken some provision of the contract under which he is rendering services may nevertheless recover the value of services rendered; but it will be found on examination that these are cases where the party who has broken the contract has nevertheless conferred some substantial benefit in pursuance of the contract on the other party to it, and he is allowed to recover the value of the benefit thus conferred, less the damages resulting from his breach. See *Pixler v. Nichols,* 8 Iowa, 106; *McClay v. Hedge,* 18 Iowa, 66; *Jemmison v. Gray,* 29 Iowa, 537; *Wolf v. Gerr,* 43 Iowa, 339; *Whitesell v. Hill,* 101 Iowa, 630. In the case before us it appears without question that the defendant received no benefit whatever from the plaintiff's services. After the

well was abandoned by plaintiff, it was in such condition that no use could be made of it.

Further discussion would seem to be unnecessary. The theory on which the case was submitted to the jury and on which a verdict was returned for the plaintiff was fundamentally wrong, and it is unnecessary to discuss the specific errors argued; for they involve questions which are not likely to arise if the case is again tried and correct rules of law as to the plaintiff's right of recovery, if he has any, are observed.

The judgment of the trial court is therefore *affirmed* on plaintiff's appeal, and *reversed* on defendant's appeal. .