## THE BERGER MANUFACTURING COMPANY, Appellant, v. FREDERICK H. CRITES, Respondent.

### Kansas City Court of Appeals, March 2, 1914.

1. **ACCOUNTS: Goods Sold and Delivered: Warranties: Patent Materials.** This action was instituted by the plaintiff to recover the balance due on an account for certain patented building materials sold and delivered to the defendant. The defendant recovered judgment on a counterclaim, but afterwards remitted the difference so as to equalize the amounts of the judgment. *Held*, that where a manufacturer contracts to supply an article which he manufactures to be applied to a particular use, of which he is advised, so that the buyer necessarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that the article shall be reasonably fit for the use to which it is to be applied.

2. **CONTRACTS: Plans and Specifications.** The plans and specifications must be regarded as a part of the contract between plaintiff and the contractors.

3. ————: **Contractors: Implied Warranties.** Where a known, described and definite article is ordered from a manufacturer, although it is stated by the purchaser to be required for a particular purpose, yet if a known, described and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. But this rule does not apply where the inventor and manufacturer of a patented system obviously possessed superior knowledge to the contractors and others interested in the construction of the building respecting the utility of the invention and its adaptability for the particular use for which it was purchased.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*New & Krauthoff, John Taylor, C. Edwin Cooley, John N. Davis*, and *P. E. Reeder* for appellant.

*Ed. E. Naber, Ben T. White* and *R. J. Smith* for Respondent.

JOHNSON, J.—This is an action to recover a remainder of $1531.79, due upon an account for certain patented building materials sold and delivered by plaintiff, a manufacturer in Canton, Ohio, to a firm of building contractors in Kansas City, composed of defendant and Frank R. Beatty. Both members of the partnership were sued by plaintiff but service could not be obtained upon Beatty and the action proceeded against defendant Crites alone who filed an answer and counterclaim. At the conclusion of the evidence the court instructed the jury to find for plaintiff for the full amount of the demand in the petition and submitted certain issues of fact relating to the counterclaim which were resolved by the jury in favor of defendant. The verdict was for plaintiff on the petition for $1531.79, for defendant on the counterclaim in the sum of $1800, and ended with the recital "deducting the lesser amount from the greater we find the issues for the defendant in the sum of ($268.21) two hundred sixty-eight dollars and twenty-one cents." Afterward defendant, in obedience to a peremptory suggestion from the court on the hearing of the motion for a new trial, entered a remittitur in a sum sufficient to equalize the claim of plaintiff and counterclaim of defendant, and judgment was rendered accordingly. Plaintiff appealed.

The Board of Education of Winfield, Kansas, let the contract to Crites and Beatty for the construction of a large school building for which plans and specifications had been prepared by architects in Kansas City and accepted by the board. The building was to be fireproof and the specifications called for concrete floors in the rooms, halls and corridors and gave the general contractors the option of "using the Berger metal lumber, or any other patented system of fireproofing in place of the system shown and specified, providing there are sufficient details and specifications filed with the proposals to permit them to form an

accurate opinion of the method contemplated and also to ascertain whether the system is durable and sufficient.''

The Berger system had been on the market about three years and the inventor was the manger of plaintiff's ''metal lumber department.'' He examined the plans and specifications of the school building before submitting a bid to Crites and Beatty for the installation of his system in place of the reinforced concrete floors for which the specifications included details. The essential difference between reinforced concrete and plaintiff's ''metal lumber'' construction is that in the former the tension is divided between the concrete and steel rods it embodies while in plaintiff's system, the concrete is laid on a steel substructure and is not intended or relied upon to take any of the tension which, including the weight of the concrete, is borne entirely by the ''metal lumber.''

The inventor thus describes the system: ''The Berger fireproofing system, known as metal lumber, and which is referred to in this case, consists of pressed steel sections, with bearings, such as I-angles, T's and so forth—and is designed to take the place of wooden joists—they are used as joists, and placed sixteen inches on center—both in the joists and studs. On the top is used an expanded metal lath, ranging from number twenty to number twenty-four gauge, and the bottom of the joist is arranged with prongs, by means of which the ceiling metal lath, of number twenty to number twenty-four gauge iron is attached. That is used in all of these plans. In the joist proper, the joist is provided with bridging. The joist consists of two sections, riveted back to back. Between these rivets there is an aperture formed by the joist going back to back; and in that a nail can be placed, the same as in a wall, and a nail can be driven in that. The bridging comes in twenty-inch iron—which is a tension bridging—and should be nailed in between the

joists; and by nailing this one in the other, you get a construction which is provided for three purposes—first, it is to hold the joists in line, in a vertical position, and afterwards the means of transferring any contingency loads on the joists to the joists beside it. Now, the joist lath and bridging constitutes the floor. The studs or columns of the construction also acts as bridging.''

Reduced to a more concise description the bed for holding the concrete is a reticulated steel mesh supported by steel joists or ''I'' beams.

The bid of plaintiff to furnish the materials for the floors for $12,000 was accepted by the contractors and the materials were delivered by plaintiff and put into the building by the contractors who mixed and laid the concrete in accordance with the requirements of the specifications. The concrete thus laid proved a failure, as the evidence of defendant tends to show, in two particulars, viz., first, on account of the lightness of the ''metal lumber,'' the bed sagged under the weight of the concrete which did not exceed the thickness prescribed in the specifications and thereby caused the concrete floor to crack in various places and, second, the spreading of thin concrete over a sievelike bed with nothing underneath to prevent drainage caused the water to drain away from the admixture and prevent the necessary coalescence of its elemental substances.

Expert evidence introduced by defendant supports the conclusion that the failure of the floors to conform to the standard of the specifications and their consequent rejection by the architects were due to one or both of such causes.

The evidence of plaintiff tends to show, first, that there was no deflection or sagging of the metal bed which repeated preliminary tests had demonstrated of sufficient strength to carry the intended load without substantial deflection and, second, that the lack of

coalescence was caused by the fault of defendant in putting too much water into the mixture. The inventor states that since it was not intended the concrete should possess tensility, the mixture should have contained only enough water to moisten its substances and not enough to cause drainage with consequent loss of cement and sand. In other words it should have been of the consistency of thick dough and devoid of all fluidity. The answer of the witnesses for defendant to this testimony is twofold, i. e., first, that defendant did not know that concrete suitable for pouring into moulds would be unsuited to the requirements of plaintiff's system and received no instructions from plaintiff regarding such peculiar need of the system, and, second, that on discovering that fluid concrete would lose too much cement and sand in the drainage of water through the mesh, tried a mixture similar to that the inventor states should be used and found that it was too dry—the weather being very hot —to receive the finishing coat. The inventor asserts, in substance, that defendant did not put on the finishing coat at the proper time and that tests have shown no difficulty in obtaining satisfactory results where the work is done properly. The specifications contained provisions requiring all work to meet the approval of the school board and their architects and the contract between plaintiff and the contractors bound plaintiff to conform to these requirements. The Board of Education, prompted by the advice of the architects, rejected the floors, had them relaid and deducted $1600 from the price the contractors were to receive for the building. The materials furnished by plaintiff were not removed from the construction.

The plans and specifications must be regarded as a part of the contract between plaintiff and the contractors. [Miller v. Light Co., 133 Mo. 205; Sundmacher v. Lloyd, 114 Mo. App. 317.]

There is no question of the good faith of the architects and school board in rejecting the floors and so far as it may be considered material to the present inquiry, their decision should be accepted as final and binding on both plaintiff and the contractors. [McGregor v. Construction Co., 188 Mo. 611.] The principal questions argued by counsel relate to the instructions given at the request of defendant on the counterclaim. It is contended by plaintiff that the counterclaim pleads a breach of an express warranty, while the instructions criticised submitted issues peculiar to an implied warranty. The pleaded warranty is found to be of the same nature as that in the contract between plaintiff and the contractors which, as stated, consisted in part of the plans and specifications. Before entering into this contract plaintiff examined the plans and specifications and knew that while they authorized the contractors to use the Berger system, such use was permitted only upon the condition that it would permit the laying of concrete floors which would meet certain specified requirements. With the knowledge of the precise character of the use to be made of the system plaintiff submitted a proposal which, in implied but not express terms, warranted that it would be sufficient for the purposes of its intended use.

Plaintiff invokes the rule that "where a known, described and definite article is ordered by a manufacturer, although it is stated by the purchaser to be required for a particular purpose, yet if the known, described and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." [Seitz v. Refrigerating Co., 114 U. S. 510; Benjamin on Sales, sec. 657; Hotel Co. v. Wharton, 79 Fed. Rep. 43.] Thus if a contractor should order "I" beams of a certain size which the manufacturer knew were to be used in a certain construction for which they would be too small and weak, he would not be held to an implied warranty of them

for such use. Or, should a lumber dealer sell timbers which he knew were to be put to a certain use in a construction for which they would be unsuitable, he would not be held to a warranty. In such instances the knowledge of the contractor of the suitableness for a particular use of well-known and commonly employed units of construction is presumed to be just as great as that of his vendor and since the doctrine of implied warranty rests upon the principle of superior knowledge of the vendor over the vendee, it cannot obtain in sales where presumably no such superiority exists.

The present case cannot be said to fall under that rule for the reason that the inventor and manufacturer of the patented system obviously possessed superior knowledge to the contractors and others interested in the construction of the building respecting the utility of the invention and its adaptability for the particular use for which it was purchased. It is true as suggested by counsel for plaintiff that the contractors must have known that if thin concrete were poured over a sieve-like bed, water carrying cement and sand would fall through the sieve and it must be conceded there can be no warranty implied against an obvious defect nor against one known to the purchaser. [Doyle v. Parish, 110 Mo. App. 470.]

But the contractors did not know and should not be required to have anticipated that concrete containing only enough water to moisten its substances could not be successfully spread over the bed and given the finishing coat, nor should they be held to have anticipated that the bed furnished by the manufacturer was too light to carry the load without injurious deflection. As to such matters plaintiff knew that the contractors were compelled to rely upon its judgment and skill, and we hold the case falls under the rule that "where a manufacturer contracts to supply an article which he manufactures to be applied to a particular use, of which he is advised, so that the buyer neces-

sarily trusts to the judgment and skill of the manufacturer, there is an implied warranty that the article shall be reasonably fit for the use to which it is to be applied.'' [Hotel Co., v. Wharton, 79 Fed. 1. c. 45.]

The evidence of defendant tends to show that the vital defects of the system were latent and could not be discovered by an ordinarily careful and skillful builder except by the test of use. This evidence is strongly contradicted by that of plaintiff but such contradiction raises issues of fact which we find were properly defined in the instructions.

Other points presented in the briefs of counsel for plaintiff have been examined and are found to be without merit. The cause was tried without prejudicial error and the judgment will be affirmed.

It is so ordered. All concur.