INTERNATIONAL HARVESTER COMPANY OF AMERICA, Appellant, v. SAMUEL G. TJENTLAND, Appellee.

SALES: Construction of Contract—Entire or Severable Contracts— 1 Rescission. Separate contract orders for separate machinery, in view of the *oneness* of purpose for which the machinery was ordered and the practical construction placed upon the orders by the parties, may constitute one indivisible contract, in the sense that a fraud-induced acceptance of the machinery covered by *one* of the orders will not bar a rescission of *all* the orders.

SALES: Rescission of Contract—Waiver of Rescission—Evidence— 2 Sufficiency. A buyer does not elect to waive rescission and to proceed for damages by inquiring of the seller whether he (the seller) will stand for the damages or whether the buyer must look to the seller's agent for damages.

SALES: Rescission of Contract—Effect. *Rescission works a waiver* 3 *of damages.* So held where the buyer of farm machinery rescinded the contract and, in addition, sought to recover dam-

ages by reason of the loss of his crops, directly traceable to the seller's default.

*Appeal from Polk District Court.*—W. S. AYRES, Judge.

NOVEMBER 26, 1917.

SUIT in equity to foreclose a chattel mortgage. The answer admitted the execution of the mortgage and notes sued on, and averred, in substance, that they were obtained by false and fraudulent representations. It averred further that the same were executed in payment for certain implements delivered and proposed to be delivered by the plaintiff to the defendant, and that the defendant rescinded the purchase of said implements because of such false representations. The answer also avers that the defendant was specially damaged by such false representations. The answer prays for a cancellation of the mortgage and notes, and for a decree rescinding the contract of purchase, and to recover $98 of purchase money paid, and for special damages by reason of such false representations. The trial court found a rescission and cancelled the mortgage and notes, and found also damages to the amount of $400 in favor of the defendant. The plaintiff has appealed.—*Modified and affirmed.*

*George Wambach, Victor A. Remy* and *Edgar A. Bancroft,* for appellant.

*Cummins, Hume & Bradshaw* and *Struble & Stiger,* for appellee.

1. SALES: construction of contract: entire or severable contracts: rescission.

EVANS, J.—The plaintiff is a corporation engaged in the manufacture and sale of farm implements. Thompson was its traveling agent. Thompson, with one Musel, a local implement dealer, appeared at the defendant's farm in Tama County on June 25, 1915. The defendant then contracted to buy for immediate delivery a tractor,

a threshing machine, and a hay press.  These were bought for a particular purpose, which was made known to Thompson and which was manifest.  The defendant was the owner of 120 acres of growing timothy and of 130 acres of mixed timothy and clover.  The hay harvest was near at hand. The defendant proposed to press and bale a considerable part of his timothy and clover, and to cut and thresh for seed the principal part of his clear timothy.  The tractor shipped was intended to operate both the threshing machine and the power press for baling.  The defendant signed two written orders, one covering the tractor and the other covering the thresher and the baling press.  Each order called for delivery "at once."  Thompson also assured the defendant, in substance, that the articles thus ordered were ready for immediate shipment, and that they would arrive not later than July 5th.  On July 8th the tractor did arrive. Thompson again appeared and asked for a full settlement by notes and mortgage for the three implements. It is the contention of the defendant that at that time Thompson assured the defendant that the thresher and the baling press were in transit and would arrive either that night or the next day, and the defendant, relying upon such representation, executed the notes and mortgage in suit, covering the purchase price of his entire order.  The thresher and baling press were not in transit, and Thompson had no reason to believe that they were.  They did not arrive until the 25th day of July, which was too late to be of any service to the defendant for the year 1915.  The defendant, therefore, refused to receive the thresher and baling press, and, as he contends, tendered back the tractor, coupling with his tender a demand for $98, which he had paid thereon.

1.  One of the first questions to be considered is whether there was *one* contract or *two*, and whether the defendant was bound to keep the tractor even though he was entitled to refuse the threshing machine and the baling press.  The

plaintiff's contention is that the contract for the tractor was separate and complete, and that there was a timely delivery thereof on July 8th, and that the subsequent failure as to the other units would not affect the relation of the parties under the tractor contract.   The contention for the defendant is that there was but one transaction represented by the two orders and two notes, and that one chattel mortgage covered both notes, and covered indiscriminately all the machinery thus purported to be purchased.   In other words, the mortgage given purported to secure the purchase money of all the mortgaged machinery without any separation of the units.   He contends also that he was induced to accept the tractor on July 8th by the false representations of Thompson that the other units were in transit, and that he would not have accepted the delivery of such tractor at that time, except in reliance upon such false representations;   that the three units were purchased by him in pursuance of one purpose;   and that he had no use for the tractor except for the purpose of operating the press and thresher.   If the defendant was induced by false representations to order any or all of these articles of machinery, he would be entitled to interpose such defense against the order thus obtained, whether it was divisible or indivisible. The importance of the question of divisibility now is that it is claimed by plaintiff that all objection to the tractor was waived at the time of its delivery and acceptance.   But if such acceptance was induced by false representations that the other machinery was in transit, we see no good reason why the fact is not available to the defendant as a ground of rescission of the acceptance of the tractor, as well as a ground of refusal of the other articles.   A significant circumstance appears in evidence which indicates the construction which the parties themselves put upon the contract as an indivisible one, at and immediately after the time of the execution of the orders.   The written order for the tractor

included a proviso that 10 per cent of the purchase price should be paid at the time the order was signed. No payment was in fact made at that time. The other order contained no such proviso. On June 29th, Thompson appeared again, with a request for the 10 per cent to be paid. In the meantime, he had not sent in either order. The reason given by him for deferring the same was the fact that the first payment on the tractor had not been made. If the two orders were not parts of the same transaction, the failure to make the first payment on the tractor would have furnished no warrant for delay in sending in the other order. The defendant immediately paid the amount demanded, and both orders were sent in on the following day. Thompson sent in the order to the plaintiff's office at Cedar Falls. This office, being unable to fill the order, forwarded the same to the Chicago office. The Chicago office, being unable to fill the order, forwarded the same to the factory at Springfield, Ohio. The factory, being unable to fill the order, immediately proceeded to manufacture the articles. We think it quite clear that the act of Thompson in holding up both orders until the stipulated payment should be made on the tractor was a practical construction which was accepted by the defendant, and that both parties ought now to be held to it. We are also strongly inclined to the view that the construction thus adopted was the correct construction. As to the weight of the evidence on the question whether grounds of rescission existed, we think the circumstances strongly corroborate the defendant, and that the trial court properly found for him on such issue.

2. It is urged by the plaintiff that the defendant did not in fact exercise his right to rescind, if any, but that, on the contrary, he affirmed the contract, and thereby waived his right of rescission. It is undisputed that

2. SALES: rescission of contract: waiver of rescission: evidence: sufficiency.

the defendant refused the thresher and the baler when they
arrived on the 25th.   These, therefore, never came into his
possession.   It is undisputed also that he demanded the
return of $98 that he had paid upon the tractor.   These
implements were not shipped by the plaintiff directly to
the defendant, but were shipped to the local implement
dealer, Musel.   The tractor was never moved from the imple-
ment house of this local dealer, although it was under lock
and key, and the defendant had a key.   It is the contention
of the plaintiff that the defendant demanded damages as a
condition of surrendering the tractor.   This is denied by the
defendant.   Whatever was done by the defendant in the as-
sertion of his right of rescission was quite informal, and
apparently without any very definite idea of the exact na-
ture of his right.   But on the whole, we think his intent
and offer to rescind were made clear, and that there was no
misunderstanding about it on the part of the plaintiff's
agents.   Plaintiff places some reliance upon a letter written
by the defendant on July 20th, which was as follows:

"Tama, Iowa, July 20, 1915.
"The International Harvester Company of America,
"Dear Sirs:

"On the 25th of June I purchased from one of your
agents with the name of R. H. Thompson of Cedar Rapids
one 8-16 H. P. Mogul Engine, one new Racine Thresher,
with 20-inch cylinder and 32-inch rear with 100 feet of
belt, one 17x22 International Hay Press, belt power, and
that on the 27th day of June said R. H. Thompson ac-
cepted $70 (Seventy dollars) under the agreement that said
machinery should be at Chelsea and delivered on the fifth
(5) of July and that on the 8th of July the Engine was here
and I paid the freight on same, $8.25, and give said R. H.
Thompson Chattel Mortgage and notes for same machines,
and on same day, the 8th of July, said R. H. Thompson
told me to go to work and cut my hay as he would guarantee

the rest of the machinery would be here in two days for sure. So I could depend on to get it baled and so I did but too late. It is the twentieth of July and no (baler) hay press has showed up yet. That I have had between 50 and 60 tons of hay laying flat on the ground awaiting on the hay press to come, and that I had said hay sold to be delivered baled, but now the hay is spoiled and contract is past. Said money was to be paid—the first note on said machinery due August 1st. I am just writing to you to find out if the International Company will stand for the damage or if I should hold R. H. Thompson responsible in own person. Please advise me what to do.

"Yours truly,

"(Signed) S. G. TJENTLAND."

The claim is that this letter amounted to a waiver of the right of rescission, and that it amounted to a demand for damages. We do not think that the letter could be contrued as a waiver of his present rights. Even though he had been willing, on July 20th, to affirm the contract and claim damages for the false representations, it does not ·follow that he consented to wait until July 25th, or that he consented to accept delivery at such deferred date. We think, however, that the letter cannot be fairly construed either as a waiver or as a demand. It only purported to be a letter of inquiry, and such inquiry was pertinent, under the circumstances. We think, therefore, that the trial court properly found that the defendant had not waived his right to rescind.

3. The trial court in its decree not only allowed a rescission, and thereby cancelled the notes and mortgage sued on, but it also allowed damages for $400. This sum was made to include $98 which had been paid by the defendant as a part of the purchase price of the tractor. The remaining $302 was necessarily allowed as damages suffered by

3. SALES: rescission of contract: effect.

the defendant in the loss of his hay crop by reason of delay. Complaint is made by appellant of this feature of the decree. In this respect the decree cannot be sustained. If the defendant was entitled to recover any damages, he was entitled to recover *all* his damages. If he recovered any damages, the amount recovered must be deemed all his damages. If he should receive all his damages, he would be made whole, and there would be no occasion for awarding rescission. The defendant had his election of the two remedies: either to denounce the contract and rescind it, or to affirm it and claim damages. To take one remedy was to waive the other. Having declared upon a rescission, he was entitled to be put *in statu quo*, and to recover whatever of the purchase price he had paid. This would doubtless include any expenses incident to the purchase, such as the payment of freight. But, the rescission being awarded, such remedy must be deemed complete. He cannot have rescission without repudiating the contract, nor damages without affirming it. *Van Vliet Fletcher Auto. Co. v. Crowell*, 171 Iowa 64; *Wicks v. German L. & I. Co.*, 150 Iowa 112; *Bamberger v. Burrows*, 145 Iowa 441; *Price & Teeple Piano Co. v. Sheenan*, 150 Iowa 189, 193; *American Fruit Product Co. v. Davenport V. & P. Works*, 172 Iowa 683. To the same effect see *Wilson v. New U. S. Cattle-Ranch Co.*, 73 Fed. 994; *Stuart v. Hayden*, 72 Fed. 402; *Bowen v. Mandeville*, 95 N. Y. 237.

For the reason indicated, the decree entered below will be modified. The order of rescission and cancellation will stand. The defendant will be allowed to recover $98 with interest, and no more, being the amount paid by him on the purchase price of the tractor, including freight. This will restore the *status quo*. No damages will be allowed.—*Modified and affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.