GRANETTE PRODUCTS COMPANY, Appellee, v. ARTHUR H. NEUMANN & COMPANY, Appellant.

**CONTRACTS:** Construction—Building Contracts—Implied Adoption
1 **of Terms of Related Contract.** A contract by a ''subcontractor'' to furnish the principal contractor certain artificial stone ''*according to the plans and specifications*'' of the architects of the building, together with samples and setting plans ''*approvable*'' by said architects, impliedly adopts and embraces within its terms the provisions of the plans and specifications of the general contract (between the principal contractor and the owner of the building) to the effect (1) that the architects may reject any and all materials, and their rejection shall be final; (2) that the subcontractor will, at his own expense, remove from the premises all rejected materials; and (3) that the subcontractor will replace rejected material with other proper material.

**CUSTOMS AND USAGES:** Building Contracts—Approval of Mate-
2 rials—Noncontradictory Custom. Under a contract providing for the approval of materials to be furnished by a subcontractor to a principal contractor in part execution of a building contract, a known custom may be pleaded, to the effect that such approval was to be determined according to the plans and specifications of the general contract · between the principal contractor and the owner of the building, provided that such custom is not contradictory to the subcontractor's contract.

**PLEADING:** Motions—Striking Revamped Pleading. Striking a
3 pleading which is simply a repleading of a formerly stricken matter is proper, but not so when the repleading is so coupled with new matter as to render the whole pleading proper.

**SALES:** Rescission—Damages Recoverable. A vendee of material for
4 a particular purpose may rescind for failure of the material to meet the contract terms, and may recover his reasonable .expense *in attempting to use the material*.

**Headnote 1:** 9 C. J. p. 710. **Headnote 2:** 17 C. J. pp. 492, 493, 499, 504, 508, 517. **Headnote 3:** 31 Cyc. p. 619 (Anno.) **Headnote 4:** 35 Cyc. p. 643.

*Appeal from Polk District Court.*—O. S. FRANKLIN, Judge.

MAY 12, 1925.

OPINION ON REHEARING OCTOBER 2, 1925.

ACTION to recover for building material furnished a principal contractor, with counterclaim. From a ruling striking portions of the answer, the defendant appeals; and from the overruling of a motion to strike the counterclaim, the plaintiff appeals. The defendant, having first perfected its appeal, is designated appellant.—*Reversed on defendant's appeal; affirmed on plaintiff's appeal, and remanded.*

*Carr, Cox, Evans & Riley,* for appellant.

*Fred F. Keithley* and *Guy A. Miller,* for appellee.

VERMILION, J.—I. The amended and substituted petition alleged that the plaintiff and defendant entered into a written contract whereby the plaintiff undertook to manufacture and

1. CONTRACTS: construction: building contracts: implied adoption of terms of related contract.

deliver to the defendant certain artificial architectural stone, to be used by defendant in the construction of a school building at Council Bluffs. It alleged that the greater part of the stone was delivered, and that the defendant refused to accept further stone, and elected to rescind the contract. The contract is set out. In the contract the plaintiff is designated as the subcontractor, and the defendant as the contractor, and it is provided as follows:

"Section I. The subcontractor agrees to furnish all labor and materials necessary to complete work as described in Section II of this agreement for the Council Bluffs High School, Council Bluffs, Ia., according to plans and specifications prepared by Proudfoot, Bird & Rawson, architects, located at Des Moines, Iowa."

"Section II. The subcontractor agrees that the material to be furnished and work to be done by him is as follows: All of the 'Granette' Concrete Architectural stone trim, including all

sills,;steps, etc., in lieu of Bedford stone as mentioned and called for in revised plans and specifications as prepared by the above mentioned architects. Sample of 'Granette' to be approved by architects. It is further agreed that the subcontractor will furnish setting plans and number all stones, also provide each stone with anchor and lewis holes as necessary. Setting plans to be submitted to architects, also all finished product to be same as approved sample, also all moulding to run true and corners square and straight. All of the above mentioned work to be subject to the approval of the above mentioned architects.''

The amended and substituted answer contained allegations that the plans and specifications for the building as prepared by the architects were those referred to in the contract with plaintiff, and were furnished plaintiff; and portions of the specifications are set out, providing that the architects might require the contractor to remove from the premises such of his materials or work as in their opinion were not in accordance with the plans and specifications, and to substitute satisfactory work and materials, and that the expense of so doing should be borne by the contractor, and that the decision of the architects as to the true intent and meaning of the plans and specifications should be final and binding on both parties to the contract, and that the term ''contractor,'' as used in the plans and specifications, should mean the person or persons who contracted for the performance of the work. It was alleged that the plaintiff had knowledge, at the time the contract in question was entered into, of a provision in the defendant's contract for the construction of the building, to the effect that the contractor would remove from the grounds or building all materials condemned by the architects, whether worked or unworked, and take down all portions of the work which the architects should condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications, and should make good all work damaged or destroyed thereby. It was alleged that the plaintiff had knowledge that the contract in question was entered into for the purpose of enabling defendant to fulfill the obligations assumed by the general contract, and that the approval of the architects required by the contract with plaintiff, by reason of such knowledge, and by reason of the custom then existing between con-

tractors and subcontractors engaged in the business of constructing public buildings, meant the approval of the architects in accordance with the terms of the general contract. It was further alleged that the reference to the plans and specifications in the contract sued on constituted an adoption by the parties thereto of the terms and conditions of the general contract and the plans and specifications so pleaded; and that plaintiff was thereby bound to perform the work in accordance with the plans and specifications and the general contract. It was alleged that the material furnished by plaintiff pursuant to its contract and the plans and specifications did not comply therewith, nor meet the approval of the architects, as required by the terms of its contract and the specifications and the general contract; and that, as a result thereof, the school district, acting by the architects, after a considerable portion of the stone had been set in place, ordered its removal, and ordered defendant to discontinue receiving material from plaintiff. These allegations were also made a part of a counterclaim.

The foregoing allegations, except the allegation that the materials furnished by plaintiff did not comply with the contract between plaintiff and defendant and the plans and specifications, and did not meet with the approval of the architects, as required by plaintiff's contract and the plans and specifications, were, on motion of plaintiff, stricken from the answer and counterclaim. It is from this order that the defendant appeals.

The underlying question presented is whether, and, if so, to what extent, the plans and specifications for the construction of the building by the principal contractor, and the principal contract, were made a part of the contract in question. It is the contention of plaintiff that the contract between plaintiff and defendant was an executory contract for the manufacture and sale of material to correspond to the sample, and in number of pieces, shape, and character, as required by the plans and specifications and complying with the express terms of the contract, and subject to the approval of the architects; that the reference to the plans and specifications was only for the purpose of identifying the pieces of stone to be furnished. On the other hand, the defendant contends that it was a building subcontract; and that the plans and specifications and the principal con-

tract were made parts of it; and that plaintiff was bound by the terms of the specifications and principal contract with respect to approval by the architects of the material furnished, and their right thereunder to condemn the material after its use in the building, and making their decision final.

I. The contention that the plans and specifications became a part of the contract in question only to the extent, and for the purpose, of identifying the materials to be furnished, puts, we think, too narrow a construction upon the language of the contract. The contract expressly designates the plaintiff as a subcontractor. This alone would, perhaps, not be conclusive; but it undoubtedly is a circumstance entitled to weight in determining the character of the undertaking and the rights of the parties. The material to be furnished was an artificial stone, made in molds for this particular building, and admittedly to be according to certain specifications as to size and shape. The pieces were to be numbered, and a setting plan furnished by plaintiff, to indicate their position in the building. The labor involved in preparing the necessary molds and making the stone was, obviously, the chief element of their value, as compared with the raw materials of which they were composed. We fail to see how the fact that plaintiff was not required to set the pieces in the wall makes of it a mere seller of material, and not a subcontractor, as against the declaration of the contract and the pleaded facts. Such a distinction is made in the case of *Breen Stone Co. v. Bushnell Co.*, 117 Minn. 283 (135 N. W. 993), relied upon by plaintiff; but we are not convinced of its soundness in principle, where material is manufactured to conform in design and shape to the plans and specifications for a particular work. See *Berger Mfg. Co. v. Crites*, 178 Mo. App. 218 (165 S. W. 1163). The plaintiff took from the principal contractor a particular part of the work. 9 Corpus Juris 694. That the subject-matter of the contract, the situation of the parties, and their purpose in making the contract are to be considered, where necessary, in arriving at its meaning, is well settled. *United States Fid. & Guar. Co. v. Iowa Tel. Co.*, 174 Iowa 476. We are of the opinion that plaintiff was a subcontractor, rather than a mere seller of material.

The general rule is that, where a subcontractor undertakes

to do work according to the plans and specifications of the principal contract, such plans and specifications become a part of his contract, even without an express provision that they are so made a part thereof. *Miller v. Municipal Elec. L. & P. Co.,* 133 Mo. 205 (34 S. W. 585); *Berger Mfg. Co v. Crites,* supra; *Sundmacher v. Lloyd,* 114 Mo. App. 317 (89 S. W. 368); *Hartwell v. Fridner* (Tex. Civ. App.), 217 S. W. 231; *Jones & Carey v. Gilchrist, Ramsey & Henderson,* 88 Tex. 88 (30 S. W. 442); *Leiter v. Dwyer Plumbing Co.,* 66 Ore. 474 (133 Pac. 1180); *Gray v. Cotton,* 166 Cal. 130 (134 Pac. 1145); *Cook v. Foley,* 81 C. C. A. 237 (152 Fed. 41); 9 Corpus Juris 710.

The contract in question expressly provided that the work done by plaintiff was to be subject to the approval of the architects.

"That parties may contract with reference to the approval of work to be done under their agreement, so that the one rendering services cannot recover unless the services rendered are approved as satisfactory by such person, is well settled." *Miller v. Mason City & F. D. R. Co.,* 132 Iowa 412, and cases cited.

Such a provision, in the absence of fraud or gross mistake on the part of the one whose approval is provided for, is binding. *Cook v. Foley,* supra. We are of the opinion that the provisions of the specifications relating to the right of the architects to require the contractor to remove from the premises such of the materials or work as in their opinion are not in accordance with the plans and specifications, and to substitute satisfactory work and materials, and providing that the decision of the architects as to the true intent and meaning of the plans and specifications shall be final and binding upon both parties to the contract, and that the term "contractor," as used in the plans and specifications, should mean the person or persons who contracted for the performance of the work, became also parts of the contract, and binding upon the plaintiff.

The petition alleged that the material furnished by plaintiff was approved by the architects; and this allegation was traversed by the answer. The question whether the architects might once approve the material furnished, and later reject it and require that used in the building to be removed, is not presented by the record; and upon it we express no opinion. We are of the

opinion that the court erred in striking from the amended and substituted petition and counterclaim the allegations in respect to the furnishing of the plans and specifications to plaintiff, and their adoption as a part of the contract in question, which set out provisions of the plans and specifications.

II.   The contract between plaintiff and defendant did not, in terms, refer to the principal contract.   The amended and substituted answer and counterclaim alleged that the plaintiff had knowledge of certain provisions of the prin-

2. CUSTOMS AND USAGES: building contracts: approval of materials: non-contradictory custom.

cipal contract, and of the fact that the contract with plaintiff was entered into to enable defendant to comply with the principal contract; and that, by reason of such knowledge and the custom existing between contractors and subcontractors, the approval of the architects required by the contract with plaintiff meant such approval in accordance with the principal contract. A custom concerning the subject-matter of a contract of which the parties are chargeable with knowledge is, by implication, incorporated in the contract, unless expressly or impliedly excluded by its terms, and may be shown to aid in its interpretation, but not as tending to vary or contradict the contract. *Rindskoff Bros. v. Barrett*, 14 Iowa 101; *Milroy v. Chicago, M. & St. P. R. Co.*, 98 Iowa 188; *Frum v. Keeney*, 109 Iowa 393; *McDowell v. Bowles, Billings & Kessler Gr. Co.*, 177 Iowa 744; *Carlsten-Williams Co. v. Marshall Oil Co.*, 187 Iowa 80.   See, also, 17 Corpus Juris 493.

We think the court was also in error in striking from the amended and substituted answer the allegation that, by reason of a custom existing among contractors and subcontractors in such work, the approval of the architects provided for in the plaintiff's contract meant the approval provided for in the provision of the contract set out.

III.   It is urged that the matter so stricken was but a repleading of allegations that had, on motion, been stricken from the original answer, and that, therefore, the ruling was not

3. PLEADING: motions: striking revamped pleading.

erroneous.   The allegations stricken from the amended and substituted petition and counterclaim, while to some extent a repleading of matters stricken from the former pleading, were so coupled with

allegations of new matter that the whole was proper pleading, and the rule contended for is not applicable. *Kinney v. Reed,* 164 Iowa 337.

IV.   The plaintiff has appealed from the overruling of its motion to strike the counterclaim.   The counterclaim contained an itemized statement of the defendant's alleged damages, including an amount which it was claimed defendant had paid to or for account of plaintiff for stone furnished under the contract and various items of expense alleged to have been incurred in sorting and loading rejected stone and in the removal of rejected stone from the building.   The amended and substituted petition set out a notice given plaintiff by the defendant of the latter's election to cancel and rescind the contract because of plaintiff's failure to comply with its terms, and the amended and substituted answer admitted, in effect, the giving of such a notice.   The general rule is that one who elects to rescind a contract cannot recover damages as for its breach.   But where the contract contemplates the furnishing of material for a particular purpose, as the erection of a structure, and the purchaser expends money in attempting to so use it, and later rescinds the contract because of the failure of the material to comply with the contract, he is entitled to be put *in statu quo;* and this includes the recovery of not only the money he has paid under the contract, but also the reasonable expense he was put to in attempting to use the material for the contemplated purpose.   *Lake v. Western Silo Co.,* 177 Iowa 735; *International Harv. Co. of Am. v. Tjentland,* 181 Iowa 940; *United Engine Co. v. Junis,* 196 Iowa 914.

4. SALES: rescission: damages recoverable.

Though it is not determined that all the items in the counterclaim come within this rule,—a matter that must ultimately depend upon the proof,—the allegation is that they were so incurred, and the motion to strike the counterclaim was properly overruled.

The cause is reversed on defendant's appeal, and affirmed on plaintiff's appeal.

Fully one third of the abstract is taken up with pleadings and matters wholly irrelevant to the present appeals.   One third of the cost of printing the abstract will be taxed to the

defendant-appellant.—*Reversed on defendant's appeal; affirmed on plaintiff's appeal.*

FAVILLE, C. J., and ARTHUR and ALBERT, JJ., concur.