WOLF, CARPENTER & ANGEL V. GERR ET AL.

1. **Contract:** BREACH OF: DAMAGES. The party who has failed to perform his contract in full may recover compensation for the part performed, less the damages occasioned by his failure.

2. ———: ———: PLEADING. In an action for damages against one charged with breach of contract, the party seeking relief has the burden to establish the breach and loss occasioned thereby, and the defendant is not required to allege that the plaintiff has suffered no damage.

### Appeal from Mills Circuit Court.

#### FRIDAY, JUNE 9.

THE plaintiffs claim of defendants $300, the amount of an accepted draft paid for their use, and the further sum of $250 advanced to them.

The answer admits the allegations of the petition, and in the second count, by way of counter-claim, alleges in substance that, pursuant to a printed and written contract entered into between plaintiffs and defendants, the defendants did grading upon the Burlington & Missouri River Railroad, on section fifty-six west of Afton; that they did not complete said section, but quit work on the 18th day of July, and that plaintiffs have paid them only up to, and including, the 30th day of June; that during the month of July they removed 2180 cubic yards of earth, for which they were to receive, under the contract, 40 cents per cubic yard, amounting to $872; that the engineer in charge of said work refused to give them an estimate for the work done in July; that by the terms of the contract it was agreed that ten per cent upon the contract price should be reserved as liquidated damages, in case defendants failed to complete said contract, and that plaintiffs have retained that sum; that against the sum which defendants claim, plaintiffs are entitled to a credit of $300 for the draft in petition named, and to a further credit for the $250 named in the petition, leaving due defendants a balance of $322, for which they ask judgment.

The portion of the contract referred to in the petition, material to the present inquiry, is as follows: "The party of the second part agrees that, as the work progresses, monthly estimates shall be made of the work done and material delivered, and upon the presentation of such estimate, certified by the chief engineer, they will pay to the parties of the first part the amount of such estimates, less ten per cent, which percentage will be retained as security for the faithful completion of this contract.

"The parties of the first part agree to build and construct all road crossings, gradings for depot grounds, and make all changes of creek channels, and do all work ordered by the engineer at the same prices as before stated. It is further agreed, that if, in the opinion of the said engineer, the said parties of the first part shall neglect or refuse to prosecute the work embraced in this contract with sufficient energy to insure its completion within the time specified, or violate any of its provisions, the said engineer shall inform the parties of such part of such neglect or violation, and state the duties expected of them; and if said parties of the first part shall not immediately comply with the requirements so made, then the full power and authority is hereby vested in the party of the second part, either to place such force of men on said work as will, in the judgment of the engineer, secure the completion of said work in the time specified in this contract, deducting the expenses so incurred from the amounts agreed to be paid to the parties of the first part under this contract, or to declare this contract forfeited; and on such declaration being given in writing, through said engineer, this contract shall cease and determine immediately, and the party of the second part may forever retain the reserved percentage on account of the consideration, which shall be considered and treated as liquidated damages, which they may have sustained, by reason of the forfeiture of this contract. It is further agreed that whenever, in the opinion of the chief engineer, this contract shall be completely performed on the part of the parties of the first part, and the said engineer shall certify the same, together with his estimate as aforesaid, the

said parties of the second part shall, within twenty days after the receipt of such certificate, pay to the party of the first part the sum which, according to this contract, may be due. It is further agreed that time is the essence of this contract."

The plaintiffs' demurrer to this answer was sustained upon the following grounds: " 5th. The right of defendants to recover for work done on section 56 is governed, controlled and limited by and to the terms of the contract, and that said contract shows that they should not complain therewith. 6th. Said contract does not aver that plaintiffs have not sustained damage by reason of the non-performance of the contract relied on. The amount defendants can recover under this count being the reasonable value of the work done, less the amount already paid by plaintiffs, and the amount of damages to which plaintiffs are entitled, by reason of the non-performance of the contract by defendants. " 7th. Said count assigns no reason or excuse whatever for his breach of contract."

The remaining causes of demurrer were overruled, and they are not set out in the abstract. Defendants appeal.

*Hale & Stone*, for appellants.

No argument for appellee on file.

DAY, J. The count of the answer demurred to sets up a good cause of action against the plaintiff. It is now the settled doctrine in this State that a party who has failed to perform in full his contract may recover compensation for the part performed, less the damages occasioned by his failure. *Pixler v. Nichols*, 8 Iowa, 106; *McClay v. Hedge*, 18 Id., 66; *Jemmison v. Gray*, 29 Id., 539. The answer in this case alleges that defendants removed 2180 cubic yards of earth, for which they were to have, under their contract, the sum of $872, and that they have been paid thereon only the sum of $550.

The contract provides two courses, either of which the plaintiffs may pursue, in the event of the defendants' failing to prosecute the work with sufficient energy to insure its com-

*[margin note: 1. CONTRACT: breach of: damages.]*

pletion by the time agreed upon. They may place such force of men upon the work as will in the opinion of the engineer secure the completion of the work in the time specified in the contract, and deduct the expenses so incurred from the amount agreed to be paid defendants; or they may declare the contract forfeited and retain the reserved percentage of ten per cent as liquidated damages. But in either case the defendants are entitled to pay for what they do, less the damages which result from their failure, whether that damage be the ten per cent reserve, or what plaintiffs may pay to complete the contract. It was not necessary that defendants should

2. ——: ——: assign any reason or excuse for the breach of the pleading. contract. They are entitled to pay for what they do, less damages occasioned, without reference to the cause of the breach of contract. Nor was it necessary that defendants should aver that plaintiffs had sustained no damage by the breach of the agreement. If plaintiffs have sustained damage, they must aver and prove that fact. The law does not cast upon defendants the burden of proving a negative of this character. The demurrer should have been overruled.

REVERSED,

---

## DOOGAN v. ELLIOTT.

1. **Executor:** DISCHARGE OF: LIABILITY. Upon a verbal order of the county judge, the executor was authorized to pay into his hands any sums in his hands belonging to the estate or legatees thereof, and the judge was liable upon his bond for their proper disbursement.

2. ——: ——: VERBAL ORDER. When the county judge received the money and discharged the executor, the latter could not be held liable to the legatees until the order of discharge was in some manner impeached or set aside.

*Appeal from Jasper Circuit Court.*

FRIDAY, JUNE 9.

THE petition in substance alleges that on the 10th day of February, 1863, the defendant was duly appointed by the

probate court executor of the estate of Thomas Doogan, deceased, and that, as such executor, he received a large amount of money and property belonging to the estate, of which, after paying all claims against the estate, there remained for distribution the sum of $1019.28; that Thomas Doogan made a will, containing the following bequest: "I give and bequeath to Patrick Doogan, my brother, one-fourth of my estate at my death, residence not known. Provided said Patrick Doogan should not be found, I want the above named Anna Mahan and Mary Bedford to have Patrick Doogan's share of my estate divided equally between them;" that on the 28th day of October, 1868, the defendant was ordered by the probate court to make distribution of the $1019.28, remaining in his hands, to the legatees named in the will; that at the time of the making of the will and of the death of Thomas Doogan, plaintiff was in the State of Georgia, and his residence was unknown to Thomas at his death, and to the defendant up to 1873, and the death of Thomas and plaintiff's rights under the will were unknown to him until 1873; that defendant not being able to find petitioner, held the amount due him, as trustee for him, and has so continued to hold the same to this time. Plaintiff asks judgment for $500 and costs.

The answer denies all the allegations of the petition, and, in the fifth count, alleges as follows: "Defendant further answering says, that on the 10th day of February, 1863, he, in connection with J. A. Killen, was appointed executor of the estate of one Thomas Doogan, deceased; that immediately upon such appointment being made, they entered upon their duties as such executors and settled up all matters pertaining to the estate; that by the terms of the will of said Thomas Doogan, it was provided that Anna Mahan, Mary Bedford, Patrick Doogan, and this defendant, should each receive a fourth interest of said estate; that it was further provided that if said Patrick Doogan, whose place of residence was then unknown, should not be found, the share going to him should be divided equally between the legatees, Anna Mahan and Mary Bedford; that when said estate had been settled

up, and more than five years had elapsed since the appointment of this defendant as one of the executors thereof, no trace of said Patrick had been or could be found, and that, thereupon, the Probate Court of Jasper county, Iowa, ordered and directed (by verbal order, as this defendant now learns, but supposed previously it was of record), this defendant to pay into the court, for the use of said Anna Mahan, and Mary Bedford, and the other legatees, the portion that was originally intended for Patrick Doogan; that this defendant, acting under the express order and direction of the Probate Court, did previous to his discharge as such executor pay into the court the full amount due to said Patrick, and take the receipt of the probate judge for such payment; that the Probate Court refused to discharge him, or release his bondsmen until such payment was made, and gave this defendant a peremptory order to pay said legacy into court; that this defendant, in all things pertaining to said Patrick's share, acted under the orders of the court, and only paid the money into court after being expressly ordered and directed so to do by the judge thereof; that such payment made by this defendant under the direction of the court operated as a full release of this defendant from any liability on said legacy, or any liability to this plaintiff; and that if said money has not been paid over to the remaining legatees as directed in said will, the same is now in the Probate Court subject to the order of said Patrick Doogan. Defendant further says, "that upon the payment of said money into court, as ordered, he was discharged on the 28th day of October, 1868, from all liability as such executor; and more than five years having elapsed since his discharge, the statute of limitations has run thereon."

The plaintiff demurred to this count of the answer, upon the following grounds: "Because the verbal order of the county judge is no defense. The county judge had no power to make such order."

The court sustained this demurrer. The cause coming on for trial, the plaintiff proved that on the 20th of December, 1862, the defendant, as special executor of the estate of Thomas Doogan, filed an inventory and appraisement amounting to

$894.10, and that on December 24, 1862, the special executors, James Elliott and J. A. Killen, filed an additional inventory amounting to $258.19; that on the 10th of February, 1863, said executors filed a report of the sale of the personal property of the estate showing that the same amounted to $1101.72; that on the 28th day of October, 1868, James A. Elliott filed his report showing that he had received of the assets of the estate $1461.79, and had paid out $442.51, leaving for distribution among the legatees $1019.28; and that he had paid to the legatees as follows: to Anna Mahan, $101.00; to Mary Bedford, $155.68; to James Elliott, $217.86. Upon the filing of this report defendant asked that full settlement be made, and that he be discharged as executor.

The plaintiff also introduced the following order of discharge, signed by O. C. Howe, county judge, dated Oct. 28th, 1868: "Settlement being had with James Elliott, executor of said estate, upon the basis of the foregoing report, it is found that the amount remaining subject to distribution, after deducting expenses of administrator, and payment of all charges legally allowed against the estate, is one thousand and nineteen dollars and twenty-eight cents, and the same is ordered to be distributed in equal shares to the several legatees as follows:

| | |
|---|---|
| To Patrick Doogan | $254.82 |
| To Anna Mahan | 254.82 |
| Of which she has received | 101.00 |
| Leaving unpaid to her | 153.82 |
| To Mary Bedford | 254.82 |
| Of which she has received | 155.68 |
| Leaving unpaid | 99.14 |
| To James Elliott | 254.82 |

And the said James Elliott is discharged from further duty as executor of said estate."

The defendant proved that the county judge exacted of him ten per cent interest on the money in his hands, and that, being unwilling to pay interest, he paid all the money which he had in his hands as executor to Judge Howe, on the 28th day of October, 1868, and received a discharge, signed by the

county judge and bearing the probate seal, as follows: "In County Court, October 28th, 1868. Settlement having this day been made with James Elliott, executor of the will of Thomas Doogan, deceased, and the balance found due against said executor being fully adjusted, he is hereby discharged from all further duty and liability as such executor. Witness my hand and official seal the day above written."

The defendant offered to show that Judge Howe, the probate judge, ordered and directed him to pay the money belonging to the estate into court, and make full and final settlement as such executor with the probate court. Upon plaintiffs' objection that it was incompetent thus to contradict or add to the record, this evidence was excluded. The court rendered judgment for plaintiff for $270.20. Defendant appeals.

*R. A. Sankey*, for appellant.

One who, having property in the hands of another, stands idly by and allows that other to dispose of it in good faith, in such a manner that a claim for the property cannot be enforced against him without injury, is estopped to make the claim. (*Hayes v. Steele*, 32 Iowa, 44; *Williams v. Allison*, 33 Id., 286; *Chamberlin v. Robertson*, 31 Id., 408; *Cunningham v. Cassidy*, 17 N. Y., 282.) Where a trustee pays the trust fund by order of the court, he is indemnified by the order and does not need a release. (Perry on Trusts, Chap. 32, ¶ 924.) The plaintiff's right of action arose when he claimed the defendant had misappropriated his money. (*Wheelhouse v. Bryant*, 13 Iowa, 160.) Money due a creditor may rightfully be paid by an administrator into the county court. (*Wright & Co. v. Harris*, 31 Iowa, 272.) The rights of a legatee are subordinate to those of a creditor. (2 Redf. on Wills, 448.)

*Smith & Wilson*, for appellee.

Administrators claiming merely as such, cannot by lapse of time merely set up title to the general residue. (*Arden*

*v. Arden*, 1 Johns. Ch., 314.)   An administrator or executor is a trustee, accepting the trust voluntarily, and so having no right to complain of the limitation of the trust.   (*Higbee v. Bosan*, 8 Pick., 484.)   The statute of limitations will not, in equity, bar an account between a trustee and *cestui que trust*, so long as the trust subsists and is mutually acknowledged. (*Kimball v. Ives' Administrator*, 17 Vt., 430.)

