# IN THE COURT OF APPEALS OF IOWA

No. 14-0633
Filed May 20, 2015

**PRO COMMERCIAL, LLC,**
Plaintiff-Appellee,

**vs.**

**K & L CUSTOM FARMS, INC., d/b/a**
**K & L LANDSCAPE & CONSTRUCTION,**
**INC.,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Dale E. Ruigh, Judge.

A subcontractor appeals the district court's ruling finding it breached the terms of the subcontract. **REVERSED AND REMANDED.**

Todd W. Weidemann, Brian S. Koerwitz, and Monica L. Freeman of Woods & Aitken, L.L.P., Omaha, Nebraska, for appellant.

Brenton D. Soderstrum of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

K & L Custom Farms d/b/a K & L Landscape and Construction, Inc. (K & L) appeals the district court's decision concluding it breached the terms of a subcontract with Pro Commercial, LLC. K & L claims the district court incorrectly interpreted the terms of the subcontract and also should have awarded K & L damages in its counterclaim for breach of contract against Pro Commercial. Finally, K & L claims, in the event we affirm the district court's decision regarding the breach of contract, the district court erred in not giving it credit for the work it performed under the contract with Pro Commercial.

## I. Background Facts and Proceedings.

Pro Commercial decided to bid on a rest area construction project with the Iowa Department of Transportation (IDOT). It requested subcontractors submit bids for the project, and various subcontractors, including K & L, responded. The plans and specifications prepared by the architect and engineers employed by the IDOT were available to the subcontractors as they prepared and submitted their bids to Pro Commercial. K & L submitted an estimate for the dirt work and grading required for the project. On the estimate, K & L itemized descriptions of the work it proposed to do along with the price associated with the work. The estimate listed the following work descriptions:

| Description | Qty | Rate | Total |
|---|---|---|---|
| MOBILIZATION | 1 | 8,500.00 | 8,500.00 |
| REMOVAL OF FENCE | 360 | 2.00 | 720.00 |
| BUILDING SUBGRADE PREP | 2,400 | 5.00 | 12,000.00 |
| GRADING | 1 | 6,500.00 | 6,500.00 |
| REMOVAL OF TREES | 1 | 3,500.00 | 3,500.00 |
| REMOVE RETAINING WALL | 50 | 2.00 | 100.00 |
| REMOVAL OF TRASH RECEPTACLES | 11 | 100.00 | 1,100.00 |
| REMOVAL OF LIGHT POLE | 1 | 250.00 | 250.00 |
| REMOVAL OF GRILL, ROCK SURFACING & WOOD TIMBERS | 1 | 100.00 | 100.00 |
| REMOVAL OF PICNIC TABLES | 6 | 50.00 | 300.00 |
| REMOVAL OF WOODEN GARAGE | 1 | 750.00 | 750.00 |
| REMOVAL OF REST AREA BUILDING | 1 | 6,500.00 | 6,500.00 |
| REMOVAL OF VENDING BUILDING | 1 | 450.00 | 450.00 |
| REMOVAL OF WATER BOOSTER PUMP PIT & APPURTENANCES | 1 | 300.00 | 300.00 |
| REMOVAL OF INTAKE & PLUG | 1 | 250.00 | 250.00 |
| REMOVAL OF SIDEWALK | 19,358 | 1.25 | 24,197.50 |
| REMOVAL OF PAVEMENT SY WITH SAW CUT | 350 | 25.00 | 8,750.00 |

The total of all this work was $74,267.50.

Steve Aldred, estimator and project manager with Pro Commercial, contacted Bruce Hovey, estimator with K & L, to discuss the bid. Aldred testified he explained to Hovey, "I will want to make sure that you have everything in the dirt work and you're a hundred percent covered." Aldred stated that Hovey had to check with "Hector," but Hovey eventually called back and said "Yes, we're complete." Hovey also testified regarding the conversation he had with Aldred but stated he told Aldred that "what [K & L was] doing was written out on the proposal." He then instructed Aldred to call the president of K & L, Kevin Alexander, if he had other questions. Alexander testified he did have a conversation with Aldred, but that conversation dealt with Aldred's request for K & L to remove the landscaping portion of the estimate.[1] Alexander stated Aldred never asked him about the scope of the dirt work.

---

[1] K & L also bid to perform landscaping work for a cost of $46,851.00.

Pro Commercial took K & L's estimate along with the estimates from the other subcontractors and compiled them in order to submit a final bid to the IDOT for consideration. The IDOT awarded the construction contract to Pro Commercial, who in turn drafted contracts with the various subcontractors to do the work,[2] including K & L. The subcontract sent to K & L stated, in relevant part:

> SECTION 1. The Subcontractor agrees to furnish all labor, material and equipment, necessary to perform and complete all the work for [the] Adair County Rest Area, . . . as described in Section 2 hereof, and in accordance with the Drawings, General Conditions of the Contract, Supplementary General Conditions, Specifications, and Addenda No. 1. (as supplied) inclusive prepared by Yeggy Colby Associates.
> SECTION 2. Scope of Work: The Subcontractor agrees to promptly begin said work IMMEDIATELY after notification by said Contractor, and complete all work IN ACCORDANCE WITH THE SCHEDULE AS OUTLINED BY THE CONTRACTOR AND IN ACCORDANCE WITH OTHER TRADES in accordance with this Agreement upon Acceptance and notice to proceed by the Bonding Company.
> (Work Description)
> In accordance with the contract documents, as listed on Attachment "A," furnish labor, material and equipment complete as described by the following Specification Sections:
> Division 1-General Requirements (as applicable to your work); Division 31 Complete, Section 024100.
> Supply all labor, material and equipment to provide all dirt work, site clearing, subsoil work, building removal, demolition, misc items per your quote in its entirety per plans and specifications.
> Work includes, but is not limited to:
> A. 1 Electronic set of Submittals per your specifications within 10 days.
> B. Supply a schedule of values breaking out labor and materials.
> C. Attach current insurance certificate specific to this project and naming Pro Commercial LLC as an additional insured.

---

[2] Pro Commercial acted as a project manager only and did not perform any of the construction work.

D. Supply Federal ID # and list of suppliers and subcontractors.

E. Work per the attached construction schedule. Project to begin April 19th and complete in December 2010. <u>ALL subcontractors will be required to work 6 days per week unless approved by Pro Commercial.</u>

F. Work per your proposal dated 3/17/10.

Both parties signed the subcontract, but disputes regarding the scope of work K & L was to perform erupted almost immediately. K & L insisted it contracted to perform only the work itemized in its estimate; whereas Pro Commercial argued K & L was to perform all of the work described in Division 31, which included the specifications for dirt work for the project. Division 31 included items such as digging the footings for the buildings and retaining wall, supplying granular fill (rock) for the project, and excavating the sidewalk.

K & L agreed to do some of the work Pro Commercial requested, but K & L insisted this work would be billed on a time-and-materials basis. Pro Commercial asserted the cost of the work requested was included in the contract price. In addition to disputing the scope of the work, disputes arose regarding the timeliness and quality of K & L's performance. Eventually Pro Commercial stopped making further payments to K & L in July 2010, and K & L stopped working on the project in November 2010. Construction on the rest area project resumed in the spring of 2011, and Pro Commercial hired other subcontractors to complete the dirt work on a time-and-materials basis.

Pro Commercial filed a petition against K & L in February 2012 to recover the money it spent remediating K & L's work under the subcontract. K & L filed a counterclaim against Pro Commercial for the work it claims it completed but for

which it was not compensated. The case proceeded to a bench trial in August 2013. The district court issued its "Findings of Fact, Conclusions of Law, and Order" on March 17, 2014.

The court concluded the subcontract between Pro Commercial and K & L included all the work described in Division 31. Any unilateral mistake made by K & L regarding the scope of work called for in the contract would not excuse K & L from performing the contract, the court stated. It thus concluded Pro Commercial was entitled to $186,179.14 on its claim, and K & L failed to prove what amount of money it would have been entitled to had the court concluded it was entitled to payment under the counterclaim.

K & L appeals the district court's decision.

## II. Scope and Standard of Review.

> A breach-of-contract claim tried at law to the district court is reviewed by us for correction of errors at law. The district court's findings of fact have the effect of a special verdict. "The trial court's 'legal conclusions and application of legal principles are not binding on the appellate court.'" We will reverse a district court's judgment if we find the court has applied erroneous rules of law, which materially affected its decision. In contrast, the district court's findings of fact are binding on us if they are supported by substantial evidence.

*NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010) (citations omitted). Interpretation of a contract involves determining the meaning of the words in a contract; whereas construction involves determining the legal effect of such words. *Fausel v. JRJ Enters. Inc.*, 603 N.W.2d 612, 618 (Iowa 1999). We review the district court's interpretation as a legal issue unless the interpretation depended on extrinsic evidence. *Id.* In that case, the "question of

interpretation is left to the trier of fact unless 'the evidence is so clear that no reasonable person would determine the issue in any way but one.'" *Id.* (citation omitted). "[W]e always review construction as a legal issue." *Id.*

## III. Pro Commercial's Breach-of-Contract Claim.

K & L claims the district court failed to give proper effect to the intent of the parties at the time it entered into the contract when determining the scope of the work under the contract. K & L claims that had the district court considered the circumstances of the transaction, it would have noted that K & L proposed to do a very specific list of work for $74,268 and this work did not include supplying over $100,000 worth of rock, backfilling, or digging footings for the buildings and retaining wall.

The intent of the parties is the cardinal principle of contract interpretation. *NevadaCare*, 783 N.W.2d at 466. "[T]he most important evidence of the parties' intentions at the time they entered into the contract is the words of the contract." *Id.* The court can also consider the words and conduct of the parties along with extrinsic evidence such as "the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties." *Id.* "Long ago we abandoned the rule that extrinsic evidence cannot change the plain meaning of a contract. We now recognize the rule in the Restatement (Second) of Contracts that states the meaning of a contract 'can almost never be plain except in a context.'" *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 436 (Iowa

2008) (citations omitted). But "the words of an integrated agreement remain the most important evidence of intention." *Id.*

"Another relevant rule of contract interpretation requires that '[w]herever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.'" *Id.* "The rules [of contract interpretation] do not depend on a determination that there is an ambiguity, but we use them to determine 'what meanings are reasonably possible as well as in choosing among possible meanings.'" *Id.*

In the "scope of work" section of the contract at issue, the subcontractor was to "furnish labor, material and equipment complete as described by the following Specification Sections: Division I-General Requirements (as applied to your work); Division 31 Complete, Section 024100." This section went on to state the subcontractor was to "supply all labor, material and equipment to provide all dirt work, site clearing, subsoil work, building removal, demolition, misc items per your quote in its entirety per plans and specifications." The section then provided the "work includes, but is not limited to: . . . Work per your proposal dated 3/17/10."

The district court acknowledged the contract was not very clear, but the court determined that to interpret the contract as K & L requested would require the court to ignore or attribute no meaning to the language of section 2 that required the subcontractor to provide labor, material, and equipment to complete Division 31.

K & L correctly argues that Division 31 and Section 024100 included work that Pro Commercial never intended for K & L to do, including trenching for utilities, surveys, traffic control, barriers, and fencing. This work was done by other subcontractors or by Pro Commercial itself. Since Pro Commercial never intended for K & L to do this work, which was included in Division 31 and Section 024100, then K & L contends it goes to reason that "Division 31 Complete" in the contract cannot mean for K & L to do all the work that is described in that section. K & L asserts Division 31 and Section 024100 are specifications telling contractors *how* to do the work, not *what* work to do. The project inspector for the IDOT working on this project agreed with this characterization of the specifications.

Testimony from Pro Commercial's expert, Brent Thompson, also supports this interpretation. Thompson is an estimator and project manager for the Elder Corporation, and during cross-examination, he admitted he had written an email to Pro Commercial's attorney after his preliminary review of the record which stated, "normally Division 31 specifications only clarify material and methods and procedure for work as it applies to scope provided by the subcontractor." However, he also testified at trial that in his experience when the contract states "Division 31 Complete" it means the subcontractor is required to provide all of the sections that are listed in Division 31. Thompson went on to explain that if the subcontractor does not want to provide some of the work set out in that division, the subcontractor should have specifically excluded it from the proposal. In fact, another contractor on the project had excluded some of the work Pro

Commercial was seeking to have K & L do under Division 31. No such exclusions were included in K & L's estimate.

K & L presented testimony that it is standard in the construction industry in the Des Moines area for concrete subcontractors to dig foundation footings, rather than subcontractors in charge of dirt work. We note that in interpreting contracts, courts can look to the usages of trade. *See Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011). However, the usages of trade and customs in business cannot be used to change, vary, or defeat the express terms of a contract. *See Farmers' & Merchants' Bank of Ireton v. Wood Bros. & Co.*, 118 N.W. 282, 285-86 (Iowa 1908) ("While proof of custom may be competent to explain words or terms of doubtful signification, or to show a trade usage by which certain words or expressions are given an arbitrary or technical meaning, it is the well-established rule in this state that proof of custom or usage is not admissible to defeat a contract or to vary its express terms."); *Rindskoff Bros. v. Barrett*, 14 Iowa 101, 105 (1862) ("It is hardly correct to say that a contract (express) is controlled by a custom, but that it may be affected by it is too well settled to now admit of doubt.").

The issue in this case is what does the phrase "Division 31 complete" mean with respect to the scope of work K & L was to perform. K & L submitted a very specific list of work to Pro Commercial, which included prices for each itemized work description. The proposed itemized price list added up to $74,268, the ultimate price of the contract between K & L and Pro Commercial. The itemized list did not include such things as digging footings or supplying the

granular fill. K & L asserts the cost of the granular fill alone for this project was over $100,000, and it would be illogical for Pro Commercial to believe the granular fill, which was not included in the itemized list of work, would be included with the other work at a cost of $74,268. In addition, the word "complete" cannot be logically interpreted to mean all work in Division 31 as Pro Commercial asserts. Pro Commercial admits there was work within Division 31 that K & L was never expected to perform: trenching for utilities, surveys, traffic control, barriers, and fencing. Other subcontractors contracted with Pro Commercial to perform this work, and Pro Commercial has never sought for K & L to do this work. Therefore "complete" cannot mean what Pro Commercial asserts that it should mean.[3]

But the word "complete" must mean something. *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) ("[A]n interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."). K & L asserts that Division 31 is meant only to inform the contractor how the work is to be performed, not what work to perform. Therefore, with that industry understanding of what Division 31 is, "complete" in this context would mean the dirt work K & L was to perform had to be done in compliance/conformity with *all* of the directions listed in Division 31. In contrast, the contract stated "Division 1-General Requirements (as applicable to your work)" which would mean under K & L's interpretation that the specification in this

---

[3] In the famous words of Inigo Montoya from the movie, *The Princess Bride*, "You keep using that word. I do not think it means what you think it means."

section only had to be followed to the extent it applied to the work K & L was to perform.

This interpretation is consistent with the following paragraph in the contract that directs K & L to "[S]upply all labor, material and equipment to provide all dirt work, site clearing, subsoil work, building removal, demolition, misc items *per your quote in its entirety* per plans and specifications." (Emphasis added.) This paragraph would be redundant if we were to interpreted "Division 31 Complete" to be a description of what work K & L was to perform rather than a description of how to perform the work.

We conclude the district court erred in interpreting the contract to require K & L to perform all of the work described in Division 31 and Section 024100. Therefore, we reverse the district court's conclusion that Pro Commercial proved its breach-of-contract claim against K & L. Because we conclude the contract did not require K & L to perform all of the work described in Division 31, we must address K & L's claims of quantum meruit and unjust enrichment. K & L is entitled to recover for the work it performed that was outside of its estimate because we conclude such work was not within the terms of the subcontract.

## IV. K & L's Counterclaim.

In response to Pro Commercial's breach-of-contract petition, K & L asserted a counterclaim for breach of contract for Pro Commercial's failure to pay K & L for the work it performed under the contract and for unjust enrichment for the value of the work K & L did that was outside the scope of the contract. The district court summarily rejected these claims after agreeing with Pro

Commercial's interpretation of the contract. As we reverse the district court's decision, we proceed to address K & L's claims.

K & L's president, Kevin Alexander, testified he notified Pro Commercial that they would charge for work done outside the scope of their estimate on a time-and-materials basis. Yet, Pro Commercial insisted that K & L perform the work asserting that work was within the scope of the contract. In addition, Pro Commercial last paid K & L for work completed under the contract in July 2010, though K & L continued to work on the project until November 2010, submitting invoices to be paid. K & L asserts it is entitled to recover $43,721.20 for extra work performed that was outside the scope of the contract and $48,530.50 for work it did under the contract. Pro Commercial did pay K & L for some of the work performed under the contract in the amount of $26,989.31, and K & L acknowledged Pro Commercial should receive a credit in the amount of $3275 for the cost to correct work that K & L performed improperly. So the total K & L is seeking from Pro Commercial is $61,987.39.[4]

**A. Unjust Enrichment.** "The doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001). There are three elements to unjust enrichment: "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the

---

[4] $43,721.20 + 48,530.50 – 26,989.31 – 3275.00 = $61,987.39

circumstances." *Id.* at 154–55. K & L claims it is entitled to recover for the work it performed on the project that was not part of the contract but that Pro Commercial demanded K & L perform. *See Nepstad Custom Homes Co. v. Krull*, 527 N.W.2d 402, 407 (Iowa Ct. App. 1994) ("A builder may recover from an owner for extras ordered or agreed upon which were not covered by the contract."); *see also Maasdam v. Estate of Maasdam*, 24 N.W.2d 316, 321 (Iowa 1946) ("But there may be an implied contract on a point not covered by an express contract.").

Pro Commercial received the benefit of K & L performing work that was not within the scope of the contract. K & L performed the work after informing Pro Commercial that K & L would bill for the work on a time-and-materials basis. The work was performed, and it is unjust to allow Pro Commercial to benefit from the work, as the work in question was part of the completed project for which Pro Commercial was paid by the IDOT, without paying K & L for the work. We agree K & L has proven its claim for unjust enrichment in this case for the work performed that was not part of the contract.

The record is clear regarding K & L's damage claim for work completed that was not under the contract. The record discloses invoices provided to Pro Commercial for work including the completion of the construction entrance; backfilling; excavation of footings for the storage building, main building, and retaining wall; and over-excavation for the sidewalks. The total of the invoices submitted to Pro Commercial for work K & L completed but that was not part of the contract was $43,721.20. Pro Commercial is given a credit for $3275 to

correct work that K & L performed improperly. We conclude K & L is entitled to judgment entered in its favor in the amount of $40,442.20.

**B. Breach of Contract.** Next, K & L claims Pro Commercial breached the written contact by failing to timely pay the invoices it submitted for work that was covered under the contract. To establish a claim for breach of contract, a party has to prove:

> (1) the existence of a contract, (2) the terms and conditions of the contract, (2) that [plaintiff] has performed all of the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, and (5) that plaintiff has suffered damages as a result of defendant's breach.

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010).

The contract provided all invoices from the subcontractor must be submitted by the 25th day of the month to be considered for payment the following month, and the application for payment must be made on the approved form. The contract also provided that Pro Commercial will pay K & L a total of $74,268 in monthly payments for the work called for in the contract so long as K & L was in full compliance with the agreement.

Pro Commercial claims that the obligation for it to pay K & L arose only if K & L was in full compliance with the agreement. Pro Commercial asserts K & L failed to comply with the agreement by not being present on the worksite six days a week when its presence was needed, and failing to do the work we concluded above was not part of the contract agreement. Because K & L was not in full compliance with the agreement, Pro Commercial asserts it did not breach the contract by failing to pay K & L for the work performed.

There is no question there was a contract between K & L and Pro Commercial, and the terms and conditions of that contract are clear. It is undisputed that K & L submitted requests for payment under the contact and two of those requests were paid in the total amount of $26,989.31. It is undisputed Pro Commercial stopped paying K & L for work performed in July 2010. It is also undisputed K & L stopped working in November 2010, and Pro Commercial did not call K & L back to the job site in the spring of 2011 to complete its performance. Instead, Pro Commercial obtained substitute performance from other contractors to complete the work K & L was to perform under the contract and to complete work that was outside the scope of the contract.

K & L did not complete the work required by the contract. But, "[i]t is now the settled doctrine in this State that a party who has failed to perform in full his contract may recover compensation for the part performed, less the damages occasioned by his failure." *Wolf, Carpenter & Angel v. Gerr*, 43 Iowa 339, 341 (1876). Thus, the issue then becomes what amount K & L can recover for its partial performance under the contract.

The district court concluded that even if K & L could prove Pro Commercial breached the terms of the contract, "the evidentiary record was inadequate to establish any damages." The court noted the record disclosed several billing errors and lax business practices by K & L.

Jenna Wilson, K & L's vice president, testified she calculated the amount of work completed under the contract, and in her opinion, the amount K & L was entitled to recover totaled $48,530.30. Of this amount, Pro Commercial had

already paid K & L a total of $26,989.31 for the work K & L had performed up to July 2010 under the contract. Further requests for payment were made by K & L; however, the evidentiary record to support these requests was severely lacking. Both Jenna Wilson and Kevin Alexander testified K & L generated invoices and requested Pro Commercial pay for work that was not completed by K & L. Both testified that K & L requested payment for demolishing the rest area building, the vending building, and a wooden garage, and completing the grading, but this work was not in fact done by K & L. It was done by other contractors Pro Commercial employed in the spring of 2011 to complete the work.

The evidence presented to support K & L's damage claim for work completed under the contract was convoluted at best. It was K & L's burden to prove the amount of damage it suffered because of Pro Commercial's breach. *See Royal Indem.*, 786 N.W.2d at 846. We agree with the district court that K & L failed to provide sufficient evidence to prove its breach-of-contract claim against Pro Commercial because it failed to prove its claim for damages. We therefore award it no further amount for the work K & L claimed to have completed under the contract.

## V. Conclusion.

We find the district court erred in concluding the contract at issue required K & L to perform work that was not included in its estimate. We reverse the district court's decision holding Pro Commercial proved its breach-of-contract claim. Because K & L failed to prove the amount of money it is entitled to recover for its partial performance of the contract, it is not entitled to recover

under its breach-of-contract counterclaim any amounts beyond those already paid by Pro Commercial. However, we conclude K & L it entitled to a judgment in the amount of $40,442.20 for work completed that was outside the terms of the written contract under its unjust-enrichment claim. We remand the case to the district court for the entry of an order of judgment consistent with this opinion.

**REVERSED AND REMANDED.**